| CANNIZZARO, J.
WRIT GRANTED; JUDGMENT REVERSED IN PART.
Relator, Murphy Oil USA, Inc. (“Murphy Oil”), filed an application for supervisory writ seeking review of the trial court’s judgment insofar as it denied its motion for partial summary judgment on this issue of whether the plaintiffs[1] have a claim in intentional tort against Murphy Oil.
FACTS'
Jim Bergeron and Kevin Taylor were employed by Lou-Con, Inc. (“Lou-Con”) as pipefitters. Murphy Oil and Lou-Con executed an agreement in 1991 whereby Lou-Con agreed to perform general maintenance and construction activities at the Murphy Oil refinery in Meraux, Louisiana.
|2On May 27, 2002, Murphy Oil began a maintenance shutdown of the #2 Fluidized Catalytic Cracking (“FCC”) Unit at the refinery. The work was completed on June 4, 2002, and the unit was brought back on line. A short time later, it was discovered that the muffler, which should have been removed, was still attached to the unit.
On June 6, 2002, a Lou-Con foreman instructed Mr. Taylor, Mr. Bergeron and a third employee to remove the muffler. Mr. Taylor and Mr. Bergeron, while standing on a man-lift approximately sixty feet in the air, began loosening the bolts, which secured the muffler to the valve. Mr. Bergeron then climbed from the man-lift to a platform and loosened the bolts on the rear of the valve.
After all the bolts were loosened, Mr. Taylor signaled the' third employee, who was operating a cherry picker from the, ground, to remove the muffler from the valve. As the muffler was being removed, flammable hydrocarbons spilled out of the muffler and ignited. Mr. Taylor was killed in the accident and Mr. Bergeron was burned on his face and neck, approximately ten percent of his body. The third employee was not injured.
After an investigation by the Occupational Safety and Health Administration (OSHA), Murphy Oil received eight “serious” citations for process safety management and loekouVtagout violations. Lou-Con was also cited for a lockout/tagout violation. Neither company received a “willful” or “repeat” citation.
The plaintiffs filed suit against Murphy Oil, among others, alleging that it negligently or intentionally caused the accident that resulted in personal injuries to Mr. Bergeron and the death of Mr. Taylor.
Murphy Oil filed two motions for partial summary judgment. The first motion sought to dismiss the plaintiffs’ negligence claims against Murphy Oil on the grounds that it was the plaintiffs’ statutory employer. The second motion ^sought to dismiss the plaintiffs’ intentional tort claims on the grounds that there was no evidence to support the allegations. The trial court granted Murphy’s motion on the statutory employer issue but denied its motion on the intentional tort issue.
*499 DISCUSSION
The issue that must be considered in reviewing this writ application is whether Murphy Oil committed an intentional tort that caused the accident.
Workers’ compensation is the exclusive remedy for an employee unless the injury complained of resulted from an intentional tort. Faust v. Greater Lakeside Corp., 98-2853, p. 8 (La.App. 4 Cir. 9/12/01), 797 So.2d 748, 752, citing La. R.S. 23:1032(A).
Intentional, as defined by the Louisiana Supreme Court, means that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981).
The intentional exception is difficult to satisfy because the courts on all levels have narrowly construed it. Reeves v. Structural Preservation Systems, 98-1795, p. 6 (La.3/12/99), 731 So.2d 208, 211. There has been no trend to liberalize the intentional tort definition. Williams v. Gervais F. Favrot, Co., Inc., 573 So.2d 533, 541 (La.App. 4 Cir.1991).
Murphy Oil argues that all the witnesses, including Mr. Bergeron, testified in their depositions that they did not believe Murphy Oil intentionally caused the accident or had reason to believe that it would occur.
In opposing the motions for partial summary judgment, the plaintiffs maintain that a defect in the design of the muffler prohibited the workers from 1¿determining if a liquid was present in the muffler. They further allege that Murphy Oil did not have records verifying any inspections on the valve since it first began operating in 1979. .
The trial judge stated in his reasons for judgment that he denied summary judgment on the intentional tort issue because he believed that the depositions of three of Murphy Oil’s employees (Richard Lambert, Raymond Carreras and Doug Freuh) created material issues of fact regarding (1) the issuing of a safe work permit by Murphy Oil without any inspections of the valve and (2) the issuing of a lockout/tag-out permit by Murphy Oil without testing the valve to see if it had been damaged during the cleaning process.
There is no mention in. the writ application, opposition thereto, or attached exhibits as to what the industry standards are concerning the inspection and testing of the equipment involved in the accident. Although Murphy Oil received several citations from OSHA as a result of the accident, allegations of deficiently designed machinery and the disregarding of OSHA safety provisions are insufficient to meet the intentional standard. See, Cortez v. Hooker Chemical and Plastics Corp., 402 So.2d 249 (La.App. 4 Cir.1981). See also, Williams, supra, 573 So.2d at 541.
In Williams, the widow of a subcontractor’s employee brought an intentional tort action against the property owner, contractor and subcontractor after her husband fell to his death during the construction of a building. Several of the workers, employees and supervisors attempted to blame one another as to who made the final decision to utilize a new procedure, which resulted in the deaths of two workers. This court, echoing the trial court’s conclusion, determined that the supervisors did not intend for the workers to fall to their deaths even though they employed a dangerous and stupid procedure to complete the job. Williams, 573.So.2d at 542. We noted that a defendant who *500 believes he is causing an appreciable | Brisk of harm to another may be negligent or even reckless and wanton, but his conduct does not constitute an intentional tort. Id. at 540.
In the case at hand, Mr. Lambert testified that he did not inspect the muffler prior to it being removed, admitted that he had someone else sign his name to the lockout/tagout permit and acknowledged that they could have used a sniffer to detect the presence of hydrocarbons.
Mr. Carreras testified that he visually checked the valve to see if it was clean but admitted that he was not qualified to tell if the valve was sealed well enough just by looking at it. He also expressed uncertainty about who was giving orders and who was carrying them out because of the large number of people working at the facility.
In addition, Mr. Freuh stated the valve leaked in several places when it was tested after the accident but no one could determine the cause. He also testified that there was uncertainty about who was giving orders to whom.
None of the aforementioned testimony can be interpreted to mean that Murphy Oil’s supervisory personnel adopted a procedure that would intentionally cause personal injury. Even though the employees, including Mr. Taylor, may have failed to implement proper procedure regarding the permits and thoroughly inspecting the muffler, their conduct does not rise to the level of an intentional act so as to provide the plaintiffs with a remedy over and above that provided by the Workers’ Compensation Law.
The plaintiffs also argue that a genuine issue of material fact exists as to whether Murphy Oil consciously desired the accident to occur or thought the accident was substantially certain to result from its actions.
“Substantially certain” is defined as inevitable or incapable of failing. Williams, 573 So.2d at 541. “Substantially certain” might be restated as “virtually sure” or “nearly inevitable.” Reagan v. Olinkraft, 408 So.2d 937, 940 (La.App. 2 Cir.1981). “Substantial certainty” has been explained as taking the case out of the realm of possibility and expressing the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. Reeves v. Structural Preservation Systems, 98-1795, p. 9 (La.3/12/99), 731 So.2d 208, 212. Nonetheless, “[bjelieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers’ compensation.” Id.
In support of their contention that Murphy Oil’s conduct constituted an intentional tort, as it knew the accident was substantially certain to happen as a result of its actions, the plaintiffs cite two cases. In the first case, Trahan v. Trans-Louisiana Gas Company, Inc., 618 So.2d 30 (La.App. 3 Cir.1993), the trial court had dismissed the plaintiffs’ intentional tort claims on an exception of no cause of action. In their petition, the plaintiffs alleged that the employer’s action in requiring the plaintiff to remove contaminated odorant from natural gas was such a blatant violation of safety regulations that the harm caused to the plaintiff was substantially certain to occur. The plaintiffs further alleged that the employer was well aware that the plaintiff had already become ill from his exposure to the chemicals on two prior occasions. The Third Circuit Court of Appeal reversed, finding that the plaintiffs’ allegations met the “substantially certain” test of *501 Bazley. In reinstating the intentional tort claims, the Third Circuit relied on the Louisiana Supreme Court decision in Carey v. UMC (United Mechanical Contractors), 553 So.2d 472 (La.1989), wherein the Court held that an exception of no cause of action was an improper procedural vehicle to dismiss an intentional tort claim against an employer. The Court concluded that where a plaintiffs petition asserts that the defendant intended to injure him or knew or should have known that his injury was substantially certain to follow, conditions of the mind such as malice, |7knowledge, and intent may be alleged generally, citing La. C.C.P. art. 856. The Court then stated, “[t]he merit of [the] plaintiffs claim is to be determined after findings of fact upon [a] motion for summary judgment or trial on the merits.” Id.
The Trahan case is distinguishable in that this case is before us on a motion for summary judgment. The Trahan plaintiffs’ successful challenge to the defendant’s exception of no cause of action does not mean that they will prevail in opposing the defendant’s motion for summary judgment or in a trial on the merits. Also, the Trahan plaintiffs alleged that the injury was immediately foreseeable to the employer and indeed was inevitable. By contrast, the plaintiffs herein make no allegations that Murphy Oil personnel knew that flammable hydrocarbons had spilled out or leaked from the muffler on prior occasions.
In the second case, Robinson v. North American Salt Company, 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98, a worker was injured because the employer required him to repair a moving conveyor belt instead of shutting the belt down so that production would not be stopped. The First Circuit Court of Appeal held that the employer’s actions rose to the level of an intentional tort because in addition to violating the safety policy, the other factual evidence established that the employer’s actions were such that the employer knew the accident was substantially certain to occur. The Court stated, “[m]ore is required in order to establish that an accident is substantially certain to occur.” Id. at p. 9, 865 So.2d at 105. Specifically, the Court relied on the testimony of the plaintiffs’ expert witness, a mechanical engineer, who testified that by requiring the employee, who was working from a non-stationary man lift bucket, to reach over with a chipping hammer to repair the frame of the elevated, moving conveyor belt near a “pinch point,” i.e., a point near one of the belt rollers where an object easily could be caught, made the employer know the accident was substantially certain to occur.
1 «With all due respect to our brethren on the First Circuit, we do not agree with the reasoning of the majority in Robinson. As the lone dissenter points out, while the plaintiffs’ expert testified that it was his opinion that the accident was substantially certain to occur, the plaintiffs’ presented no evidence that the employer had such knowledge, belief, or opinion and since there were no facts to support an essential element to prove an intentional act it was manifest error for the jury to find an intentional act. Robinson, 02-1869, at p. 1-2, 865 So.2d at 112 (McDonald, dissenting).
In the instant case, the plaintiffs raise several valid points regarding the laxed safety procedures and faulty implementation in such a dangerous environment as a refinery as well as steps that Murphy Oil could have taken with the benefit of hindsight. However, in order to satisfy the substantially certain element, the plaintiffs must show the accident was inevitable as a result of the mistakes Murphy Oil made in issuing the permits, in failing to install a sniffer, and in failing to thoroughly exam *502 ine the valve. We find the plaintiffs, in opposing the motion for partial summary judgment, offered nothing to demonstrate that Murphy Oil either knew or believed the consequences were substantially certain to follow.
The plaintiffs also contend that the several “serious” safety violations imposed on Murphy Oil by OSHA indicate that this accident was substantially certain to occur. In Section 7 — Chapter III of its Field Inspection Reference Manual, OSHA defines a serious violation as follows:
“[A] serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.”
laThe language used in Reeves and the OSHA standard is similar. However, the “certain” requirement of Reeves and the “probable” OSHA standard, when applied to the facts at hand, do not result in a finding of an intentional tort by Murphy Oil. As we stated in Williams, “[cjertain is defined as inevitable or incapable of failing, while probable deals with facts that arise from fairly, though not absolutely adequate, convincing, conclusive, intrinsic or extrinsic evidence.” Williams, 573 So.2d at 540.
The Reeves, Trahan and Robinson cases clearly indicate that a fine line exists between conduct that constitutes gross negligence and that which may be deemed intentional based on a showing that the actor was substantially certain that the consequences would follow his act. Considering the subjective nature of the “substantial certainty” requirement for an intentional act as contemplated by La. R.S. 23:1032, it is quite possible that a trier of fact after reviewing the evidence could find a tortfea-sor’s conduct was grossly negligent while another trier of fact reviewing the same evidence could conclude the conduct was intentional. If the Workers’ Compensation Act is to be liberally construed in favor of protecting the injured worker, perhaps the legislature should revisit the issue of broadening the exception to the exclusivity provision to include any injury caused by the gross negligence of the employer and/or supervising employee. See Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20. In any event, for now, we are bound by the latest jurisprudence of the Louisiana Supreme Court and our court interpreting the Workers’ Compensation Act on the intentional tort issue.
Although the plaintiffs have presented a compelling argument, it is insufficient to overcome the legislative history and jurisprudence that the intentional tort exception is to be applied in very limited circumstances. Cole v. State Department of Public Safety and Corrections, 01-2123, p. 8 (La.9/4/02), 825 So.2d 1134, 1141. Unfortunately, this was a tragic accident that ended Mr. 1 inTaylor’s life, left Mr. Berger-on with the scars from his injuries and dramatically changed the lives of the surviving families. Nonetheless, it was an accident. Because we find that the plaintiffs have failed to present factual support to establish that they will be able to satisfy their evidentiary burden at trial of proving that Murphy Oil either intended to injure them or knew their injuries were inevitable, there is no genuine issue of material fact and the trial court erred in denying Murphy Oil’s partial motion for summary judgment on that issue.
*503 CONCLUSION
Accordingly, Murphy Oil’s writ application is granted and the judgment of the trial court, insofar as it denied Murphy Oil’s motion for partial summary judgment on the issue of intentional tort, is reversed. Judgment is hereby rendered in favor of Murphy Oil dismissing the plaintiffs’ claims of intentional tort.

. The plaintiffs are Vicky C. Bergeron, wife oPand Jim H. Bergeron, and their children and Shelley S. Taylor, as natural tutrix and administratrix of the estate of the minor child, Meagan Taylor, suing individually on behalf of Meagan Taylor and on behalf of the estate of Kevin Taylor.